# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **DALE WILLIAM GILLEY,** | ) |
| **AIS 182280,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:21-CV-501-RAH-CSC |
| | ) |
| **SGT. MURRY**[1], | ) |
| | ) |
| Defendants. | ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION[2]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Dale William Gilley, Jr., a state inmate, incarcerated at the Staton Correctional Facility. Gilley alleges that Defendant Sgt. Murray, whom he sues in both his individual and official capacities, denied him adequate medical treatment for severe chest pain on the night of July 22, 2021. (Doc. 1 at pp. 1 and 4). He seeks monetary damages as well as injunctive and declaratory relief. (Doc. 1 at p. 6).

---

[1] Sgt. Murry's name is incorrectly spelled in the complaint. He is correctly identified as Sgt. Markies Murray. (Doc. 51-3). He is identified throughout this Recommendation as "Sgt. Murray".

[2] All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.

The Defendant filed a special report and relevant evidentiary materials in support of the report, including affidavits and copies of Gilley's medical records[3], addressing the claims raised in the complaint. (Docs. 51, 51-1, 51-2, 51-3, 51-4). In these documents, Sgt. Murray maintains he did not act with deliberate indifference to Gilley's medical needs. (Doc. 51-3).

After reviewing the special report filed by the Defendant, the court issued an order on March 7, 2022, directing Gilley to file a response to each of the arguments set forth by the Defendant in his report, supported **"by filing affidavits, sworn or verified declarations or statements made under penalty of perjury, or other evidentiary materials."** (Doc. 53 at p. 2) (Emphasis Added). The Order further advised Gilley that "[a]n affidavit is a statement in writing sworn to by the affiant under oath . . . before a notary public or other authorized officer," and that if a notary is not available, Gilley could support his response with "a statement made under penalty of perjury" under 28 U.S.C. § 1746. *Id.* n. 2. The order quoted § 1746 and provided the required language for a declaration that "I declare . . . under penalty of perjury that the foregoing is true and correct." *Id. See generally*, *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) (explaining notice requirements for pro se litigants). In spite of these directives, Gilley filed an *unsworn* response to this order on April 1, 2022. (Doc. 62).

---

[3] The court notes that no state official has attested to the authenticity of Plaintiff's Staton medical records. (Doc. 51-4 at pp. 1-40). Because these records support the Plaintiff's own unsworn allegations of pain in the chest (albeit on the right side, *id.* at pp. 37-38) and stomach area and do not directly bear on the question of whether Sgt. Murray treated Plaintiff with deliberate indifference on the night of July 22, 2021, the court will reference them.

The order also advised that "within fifteen (15) days from the date of this Order, the Court may at any time and without further notice to the parties (1) treat the Written Report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) rule on the dispositive motion in accordance with the law." (Doc. 53 at p. 2). Pursuant to the directives of the order entered on March 7, 2022, *id.*, the court now treats the Defendant's report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendant.

## II. PLAINTIFF'S UNSWORN DOCUMENTS

The claim addressed in this Recommendation is derived from Gilley's Complaint, which is not verified, and which cannot be considered as a part of the sworn facts in this action. (Docs. 1 and 1-1). Furthermore, Gilley filed a response to Defendants' filings, (doc. 62), but the court likewise cannot consider any statements therein in deciding summary judgment because they are neither sworn nor verified in accordance with 28 U.S.C. § 1746. *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.") (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)).

In *Roy*, as here, a pro se prisoner presented an unsworn statement labeled as an affidavit in opposition to defendants' motion for summary judgment. *Id.* at 1343, 1350. The *Roy* court held that in order for the statement to be considered on summary judgment, it must meet the statutory requirements of § 1746. *Id.* at 1348, 1350. Declarant must, at a minimum (1) date and sign the document, (2) state that its contents are true, and (3) place himself under penalty of perjury. *Id.* at 1348, 1350. Because the statement in *Roy* lacked

3

any penalty of perjury language, it could not be considered on summary judgment. *Id.* at 1350 (adopting reasoning in *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-1306 (5th Cir. 1988)). Excusing this omission would allow a plaintiff "'to circumvent the penalties for perjury in signing onto intentional falsehoods.'" *Roy*, 53 F.4th at 1350 (*quoting Nissho-Iwai Am. Corp.*, 845 F.2d at 1306).

Here, as in *Roy*, Gilley's unsworn statements lack any penalty of perjury language, and cannot be considered on summary judgment. *See* (Docs. 1[4], 1-1[5], 6, 62[6]). Any factual assertions in these filings[7] will be disregarded for purposes of considering this motion. *Roy*, 53 F.4th at 1350; *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003) (explaining that unsworn statement is insufficient to raise a fact issue precluding summary judgment). Rather, the facts in the instant action are taken from the sworn evidentiary materials proffered by Defendant. (Docs. 51, 51-1, 51-2, 51-3, 51-4).

---

[4] Gilley alleges, in his *unsworn* complaint, that on July 22, 2021, he "was awaken {sic} by a severe jolt of pain running through his chest area." (Doc. 1 at p. 4). He further claims that he complained to Sgt. Murray in the shift office of this pain and told him "he felt like he was having a heart attack, and that he needed to be sent to the health care unit." *Id.* He also claims that Murray told him, "there is no doctor on site, that nothing could be done for you, fill out a sick call slip." *Id.* Gilley claims that Sgt. Murray then sent him back to his dorm to die. *Id.*

[5] Gilley filed an administrative complaint, which is also unsworn, against Sgt. Murray concerning this same incident. (Doc. 1-1 at pp. 1-3).

[6] Finally, Gilley's response to the March 7, 2022, Order, where he repeats his same claims, is also unsworn. (Doc. 62 at pp. 1-26).

[7] The court also notes that Gilley filed numerous "Motions to Inform" with the court. The court has reviewed all of these filings, most of which deal with procedural matters, and confirms none of these motions contain sworn, verified facts, which should be considered on summary judgment.

## III. FACTS

Defendant Sgt. Markies Murray testified under penalty of perjury as follows:

2. I am employed as a Correctional Sergeant with the Alabama Department of Corrections ("ADOC"). I have been employed wit the ADOC for approximately seven years. I have been a Sergeant for approximately two years. I am assigned to Staton Correctional Facility ("Staton") in Elmore, Alabama.

3. I understand that inmate Dale W. Gilley ("Gilley") has filed a lawsuit against me. I understand that Gilley alleges that I was deliberately indifferent to his medical needs on the night of July 22, 2021. Mr. Gilley's allegations of deliberate indifference are false and I deny them.

4. I know Mr. Gilley from his time as an inmate at Staton.

5. I was on duty in the Staton shift office on the night of July 22, 2021. I do recall the incident.

6. Inmate Gilley, at his request, was permitted to come to the shift office by his dormitory officer that night. I did not have any advance notice of Gilley's situation prior to his arrival in the shift office.

7. When Gilley arrived at the shift office, I asked him what he needed. Gilley advised that his stomach was hurting. He did not mention any complaints or symptoms beyond indicating that he had a stomachache. I advised Gilley that no doctors were in the facility at the time, and told him to sign up for a sick call to see a doctor the next day. Gilley exited the shift office and returned tohis dormitory without any other complaints about his condition.

8. **At no time did Mr. Gilley indicate to me that his chest was hurting, or that he believed he was having a heart attack or heart issues. He did not appear to be in any distress only stating that his stomach was hurting. If Mr. Gilley had advised me that he was having a heart attack, I would have immediately requested emergency medical attention.** Mr. Gilley would have been transported out of the facility, if necessary, to a free world hospital for treatment and evaluation. Mr. Gilley did not express any need for emergency medical care during our brief interaction.

> 9. Mr. Gilley did not return to the shift office, or request to speak with me again, that evening.

(Doc. 51-3) (Emphasis added).

## IV. DISCUSSION

### A. Absolute Immunity

Gilley lodges claims against the Correctional Defendant, Sgt. Murray, in his official capacity and seeks monetary damages. However, Sgt. Murray, is entitled to absolute immunity for claims for money damages brought against him in his official capacity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id*. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)).  In light of the foregoing, defendant Sgt. Murray is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).  Accordingly, summary judgment is due to be granted on Gilley's claim for money damages against Sgt. Murray in his official capacity.

**B.     Deliberate Indifference Generally**

In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court determined that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. To establish a deliberate indifference claim, a plaintiff must show: (1) that the alleged deprivation is, "objectively, 'sufficiently serious,'" and (2) the defendant acted with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 834, 839 (1994) (internal citation omitted).

The objective component of a deliberate indifference claim requires a plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (citation and internal quotation marks omitted).

To establish the subjective component of a deliberate indifference claim, the inmate-plaintiff must show that a state actor defendant's conduct amounted to subjective recklessness as applied in the criminal law. *See Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024).[8] This requires a plaintiff to demonstrate "that the defendant was actually, subjectively aware that his own conduct," whether that "conduct" be action or inaction, "caused a substantial risk of serious harm to the plaintiff." *Wade,* 106 F. 4th at 1258, 1262. Even if a defendant was aware of a substantial risk to an inmate-plaintiff's health or safety, if the defendant "'responded reasonably to the risk,'" he cannot be found liable under the Eighth Amendment. *Id.* at 1261 (quoting *Farmer*, 511 U.S. at 844-45).

---

[8] Prior decisions by the Eleventh Circuit held both that the standard for establishing liability on the subjective prong of an Eighth Amendment deliberate indifference claim was "more than *mere* negligence" and "more than gross negligence." *See Wade*, 106 F.4th at 1255 (emphasis in original). The Eleventh Circuit reviewed the *Wade* case en banc to address its prior inconsistent precedent and to clarify the standard of review applicable to the subjective component of a claim alleging deliberate indifference to an inmate's health, safety, or well-being. *Id.* The *Wade* court concluded that the correct mens rea standard for claims of deliberate indifference is criminal recklessness. *Id.* To meet this standard, a plaintiff must demonstrate that the defendant was actually, subjectively aware that his actions or inactions caused a substantial risk of serious harm to the plaintiff and, with that knowledge, the defendant failed to respond reasonably to that risk. *Id.* at 1262. Notably, in a concurrence to the majority's opinion in *Wade*, the Honorable Adalberto Jordan found that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with *Wade*, "they should continue to be cited as binding precedent." *Id.* at 1265 (Jordan, J., concurring).

Conduct that amounts to mere negligence or "an inadvertent failure to provide adequate medical care" is insufficient to establish deliberate indifference. *Estelle*, 429 U.S. at 105; *Farmer*, 511 U.S. at 835. "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (citations and internal quotation marks omitted), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*.

Medical treatment need not be "perfect, the best obtainable, or even very good," and "[a] prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't. of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (citation and internal quotation marks omitted). Only medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" violates the Eighth Amendment. *Id.* (citation and internal quotation marks omitted). An inmate who received care but disagrees with the course of treatment provided or desires another type of treatment, cannot, without more, show deliberate indifference. *Hamm,* 774 F.2d at 1574. Thus, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane,* 952 F.3d at 1266 (citation and internal quotation marks omitted) (alteration in original). A "complaint that a

physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle,* 429 U.S. at 106.

### C. Claim for Deliberate Indifference on the Merits

Gilley alleges that Sgt. Murray acted in a manner to prevent him access to necessary treatment from professional medical personnel on the night of July 22, 2021. (Doc. 1). The court concludes that this argument lacks merit. The undisputed facts before the court demonstrate that on the night of July 22, 2021, Gilley came to the shift office and told Defendant Sgt. Murray that he had stomach pain. (Doc. 51-3 at p. 2). Sgt. Murray told him that no doctors were at the facility at that time and that he should sign up for sick call the next day. *Id.* Gilley returned to his dormitory and did not return to the shift office or complain to Sgt. Murray about any pain again that night. *Id.* Defendant Sgt. Murray testified that Gilley never told him his chest was hurting or that he feared he was having a heart attack. *Id.* Nor did Sgt. Murray see that Gilley was in any distress. *Id.* Sgt. Murray also testified that "[i]f Mr. Gilley had advised me that he was having a heart attack, I would have immediately requested emergency medical attention." *Id.*

Gilley has failed to establish deliberate indifference on the part of Defendant Sgt. Murray. Specifically, Gilley has not demonstrated that Sgt Murry was "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff" and failed to respond reasonably to the risk." *Wade,* 106 F. 4th at 1262. Indeed, the undisputed facts demonstrate that Gilley complained of stomach pain to Sgt. Murray on the night of July 22, 2021, but he expressed no need for emergent care, and Sgt. Murray

did not observe Gilley was in any distress. (Doc. 51-3 at p. 2). Gilley left the shift office and did not complain to Sgt Murray again that night. *Id.* Because no doctors were on sight at that time, Sgt. Murray advised Plaintiff to sign up for sick call the next day. *Id.* Based on the undisputed facts, the court concludes that Defendant Sgt. Murry behaved reasonably under the circumstances. *Wade,* 106 F. 4th at 1262.

The Court has conducted an independent review of the medical records which confirm that Gilley received medical care for his stomach pain less than 48 hours from his original complaint to Sgt Murray. Gilley was seen at Staton Medical on July 24, 2021, at 5:44 p.m. complaining of right-sided pain under his rib cage for three days. (Doc. 51-4 at pp. 37-38). The nurse noted that his condition appeared "stable," his breathing was "even and unlabored", and his gait was "erect and steady." (Doc. 51-4 at p. 37). Instructions from the July 24, 2021, visit included "allow inmate to see HCP on Monday 7-26/21 at 1200 Re: ER visit." (Doc. 51-4 at p. 11).

Gilley was next seen in medical on the afternoon of July 26, 2021, and he reported that he "feels better today." (Doc. 51-4 at p. 31). Labs were also drawn on July 26, 2021. (Docs. 51-4 at pp. 19-20 and 26). The presumed diagnosis was cirrhosis, and it was noted the abdominal pain "started after taking a few doses of tylenol." (Doc. 51-4 at p. 26). Gilley was enrolled in chronic care clinics for "Hep C and Latent Tb" with "Hep C treatment to start 9/2021". *Id.* None of the medical evidence conflicts with Defendant's testimony concerning Plaintiffs reports of pain to him on the night of July 22, 2021. Consequently, summary judgment is due to be granted in favor of Defendant Sgt. Murray

on Plaintiff's claim alleging deliberate indifference arising his alleged failure provide medical attention to Plaintiff the night of July 22, 2021.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendant's motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the Defendant.

3. This case be DISMISSED with prejudice.

4. Costs be taxed against the Plaintiff.

On or before **September 5, 2024** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's Recommendation shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 21st day of August, 2024.

                 /s/ Charles S. Coody
                UNITED STATES MAGISTRATE JUDGE